[Crim. No. 3973.   Second Dist., Div. One.   Apr. 8, 1946.]

THE PEOPLE, Respondent, v. HENRY LEYVAS, Appellant.

Katz, Gallagher & Margolis for Appellant.

Robert W. Kenny, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

YORK, P. J.—By information, defendants were jointly charged with the crime of robbery, to wit: that on or about May 23, 1945, they forcibly took from the person and immediate presence of Arthur Sage "assorted gas ration stamps authorizing 4066 gallons of gasoline, of the approximate value of $800.00." At the conclusion of a jury-waived trial, defendants were found guilty, as charged, and the court found the crime to be robbery of the first degree. Defendant Leyvas has perfected this appeal from the judgment of conviction and from an order denying his motion for a new trial.

It appears from the record that about 4:30 p. m. of May 23, 1945, Arthur Sage, an employee of the Wilshire Oil Company, was driving a tank truck along Washington Boulevard in the city of Los Angeles; that when he stopped at the boulevard stop at the intersection of Washington Boulevard and Telegraph Road, an automobile drove up on the left side of the truck; that defendant Obregon alighted from the automobile and stepped on the running board of the truck, holding a .32 revolver in his hand. He put the gun across the window in front of the driver Sage and said: "Okay, Bud, let's have the gas stamps. . . . Let's have them, or I will blow your head off." Sage then unlocked a box on the truck in which he was carrying several sheets, furnished by the government, to which had been pasted O.P.A. gasoline ration stamps of all types, fifty stamps to a sheet, and turned them over to said defendant. Mr. Sage estimated that the stamps had a value of 4,066 gallons of gasoline. He was taking them to the company's plant, to be accounted for and turned into the bank for credit to the account of the company. While defendant Obregon was taking the stamps from the driver of the truck, appellant Leyvas remained sitting behind the steering wheel of the automobile from which Obregon had alighted; as soon as the latter accomplished his purpose, he jumped into the automobile which speeded away in an easterly direction.

It is here urged that gas ration stamps were only permits or licenses to buy gasoline; "were not personal property as defined by the Penal Code, and therefore could not be the subject of a robbery," which is defined by section 211 of the Penal Code as "the felonious taking of *personal property* in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (Italics added.)

In this connection appellant argues that by its definition

of the words "personal property" in subdivision 12, section 7, of the Penal Code, the Legislature intended to limit the subject of robbery to "the five kinds of property" therein enumerated, to wit: "money, goods, chattels, things in action, and evidences of debt."

Appellant apparently has overlooked Penal Code sections 449a, the arson statute; 491, in which dogs are named as personal property, and 496c, which defines as personal property "any private and unpublished *paper*, book, record, map or file, containing information relating to the title to real property. . . ." (Italics added.)

Also, that in 1944, the Legislature of this state enacted the so-called Black Market Bill which added sections 540, 541, 542 and 543 to the Penal Code, making it a crime to counterfeit, buy, sell or *steal* "any coupon, stamp, token, certificate, or other ration evidence or document issued by the United States Government or any agency thereof in furtherance of its rationing program."

"Every kind of property that is not real is personal." (Civ. Code, § 663.)

█ As stated in *People* v. *Thomas*, 45 Cal.App.2d 128, 135 [113 P.2d 706]: ". . . robbery does not depend upon the value of the property taken. The other elements being present, the crime is made out even though the property taken be of slight value. (22 Cal.Jur. 841; *People* v. *Walbridge*, 123 Cal. 273 [55 P. 902]; *People* v. *Razo*, 43 Cal.App. 251 [184 P. 881].) . . ." In the Walbridge case, 30 cents in money was taken, and in the Razo case, two coins, a five and a ten cent piece.

In *People* v. *Caridis*, 29 Cal.App. 166 [154 P. 1061], the defendant was charged with stealing a lottery ticket of the value of $1,250. The court held that the lottery ticket had no legitimate value except as the evidence of a debt due from an enterprise which is denounced by law and conducted in defiance thereof, and therefore was not the subject of grand larceny of the amount of money which could be collected thereon. However, by way of dictum, the court in that case said (p. 169): "Considered as a mere piece of paper, the lottery ticket in question possessed perhaps some slight intrinsic value, which, however small, would have sufficed to make the wrongful taking of it petit larceny, and if that had been the charge preferred against the defendant, it doubtless

would have stood the test of demurrer. (1 McClain on Criminal Law, sec. 543.)''

Relying upon the Caridis and other cases as authority, it was held in the recent case of *People* v. *Dunsworth,* 323 Ill. App. 470 [56 N.E.2d 52, 55], that gasoline ration stamps are property, possess intrinsic value and are a subject of larceny.

Ration stamps are evidences of the permission granted by the government to buy rationed commodities (see 16 Cal. Jur. 187), and as such evidences, they have a tangible being and an intrinsic value, even though slight, which makes the stealing of them larceny. Since robbery contains the elements of larceny, with the element of either force or fear added (22 Cal.Jur. 838 and authorities there cited), property which is the subject of larceny, is also the subject of robbery.

From the foregoing, it is apparent that gasoline rationing stamps are personal property, as that term is defined by the various sections of the Penal Code, above referred to, including sections 540, 541, 542 and 543, which make it a crime, among others, to *steal* any type of ration stamp or coupon.

For the reasons stated, the judgment and order appealed from are, and each of them is, affirmed.

Doran, J., and White, J., concurred.