[No. C056855. Third Dist. July 31, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD JESUS CUELLAR, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II, III and IV of the Discussion.

**COUNSEL**

Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Julie A. Hokans, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**ROBIE, J.**—Defendant Richard Jesus Cuellar appeals from the judgment of conviction after a jury found him guilty of burglary, uttering a fictitious check, grand theft from the person, four counts of robbery, resisting arrest, unlawfully driving or taking a vehicle, and exhibiting a deadly weapon other than a firearm. In the published part of this opinion, we reject defendant's contention that there was insufficient evidence to support his conviction for grand theft. In the unpublished parts, we address his other contentions and conclude the judgment must be modified to stay, pursuant to Penal Code section 654, the sentence imposed for uttering a fictitious check.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2005, defendant went to a Nordstrom department store where he attempted to purchase some cosmetics. He tried to pay by giving the clerk a previously signed check drawn on John Becker's bank account. The sales clerk, Malalai Razawi, was suspicious of the check and alerted the loss prevention department by intentionally placing the check in the check validating machine the wrong way. She then brought the check to the back office. After a few minutes, defendant came to the back office to retrieve the check. He grabbed the check from Razawi's hand and left. John Becker later confirmed the information on the check matched his own from an old account but that he had not authorized defendant to use it.

The jury also heard evidence that defendant robbed banks in May, June, and July 2005, drove a stolen vehicle and resisted arrest in August 2005 and threatened two men with a shovel in December 2005.

The jury found defendant guilty of the charges previously listed. The trial court sentenced him to a total of 10 years in state prison. Eight months of the total prison term was for the charge of uttering a fictitious check.

## DISCUSSION

## I

### There Was Sufficient Evidence for a Reasonable Jury to Find Defendant Guilty of Grand Theft from the Person

Defendant argues that his conviction for grand theft from the person (Pen. Code,[1] § 487, subd. (c)), based on taking the "bogus check" from the sales clerk's hand, is not supported by sufficient evidence. He contends that for any conviction of theft to stand, the item taken must have "some intrinsic value." In his view, since the "check had no value beyond the paper on which it was written, [he] could not have been found guilty of theft when he took it from Razawi's hands."

The People argue that unlike petty theft, grand theft from the person does not require that the item taken has some intrinsic value. In the alternative, the People contend that while "slight," the check had sufficient intrinsic value even if defendant is correct in his interpretation of the law.

## A

### Grand Theft from the Person of Another Does Require That the Item Taken Has Some Intrinsic Value

We first consider the legal issue raised by defendant's argument. Defendant was convicted of grand theft under section 487, subdivision (c). The statute provides, "Grand theft is theft committed in any of the following cases: [¶] . . . [¶] (c) When the property is taken from the person of another." (*Ibid.*)

Defendant contends that because petty theft requires that the object taken has some intrinsic value, and the crime of grand theft " 'includes the crime' of petty theft," then grand theft "must necessarily include an intrinsic-value requirement." He states that the check did not have any intrinsic value, and therefore there was no substantial evidence to support his conviction of grand theft.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

The People cite no case directly on point; however, they assert that case law shows *petty* theft requires proof the property had some intrinsic value. The People argue there are no cases suggesting the same for grand theft. The People contend the lack of a similar requirement in previous case law for grand theft suggests the intrinsic value element is not necessary.

■ California consolidated its theft statutes in 1927 to include the common law crimes of larceny, embezzlement, false pretenses, and other theft-related crimes. (*Gomez v. Superior Court* (1958) 50 Cal.2d 640, 645–646 [328 P.2d 976].) While these crimes have all been codified into the Penal Code theft statutes, none of the elements changed from the consolidation. (*People v. Myers* (1929) 206 Cal. 480, 483 [275 P. 219].)

Prior to the codification of the theft statutes, the crime in question would have been charged as larceny. In *People v. Caridis* (1915) 29 Cal.App. 166 [154 P. 1061], the court stated, "It is essential to the commission of the crime of larceny that the property alleged to have been stolen have some value— intrinsic or relative—which, where grand larceny is charged and the property was not taken from the person of another, must exceed the sum of fifty dollars." (*Id.* at p. 168.) This does not suggest that there is no value requirement for grand theft from the person of another, merely that it does not need to be a specific minimum value as required for the other types of grand theft.

This is consistent with how California's theft statutes are structured. Section 484 defines theft generally.[2] Section 486 divides theft into two degrees, "the first of which is termed grand theft; the second, petty theft." Section 487 provides some of the circumstances for grand theft, including: (1) where the property taken has a value exceeding $400; (2) where specific types of property are taken; and (3) where the property is taken from the person of another. Section 488 provides, "Theft in other cases is petty theft."

■ As petty theft is merely theft that does not qualify as grand theft, and to sustain a charge of petty theft the property taken must have some intrinsic value, it necessarily follows that the same requirement applies to grand theft.

---

[2] The relevant portion of section 484, subdivision (a) provides, "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

B

*Standard of Review for Sufficiency of the Evidence*

"When the sufficiency of the evidence is challenged on appeal, we apply the familiar substantial evidence rule. We review the whole record in a light most favorable to the judgment to determine whether it contains substantial evidence, i.e., evidence that is credible and of solid value, from which a rational trier of fact could find beyond a reasonable doubt that the accused committed the offense." (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 859 [123 Cal.Rptr.2d 193].) "An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396 [133 Cal.Rptr.2d 561, 68 P.3d 1].) "Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury." (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429 [180 Cal.Rptr. 391].)

C

*A Jury Could Reasonably Infer That the Phony Check Had Intrinsic Value*

Defendant argues that the check, by its very nature, is valueless. He argues this under two different theories: (1) a check is merely an order to pay, and unless it is accepted, it has no value; and (2) a forged check is inherently worthless. Defendant further contends that because Razawi suspected the check was forged, it was worthless as a means of purchasing products specifically from Nordstrom.

The People argue that the check has inherent value. The People argue that since the check merely needs to have "*any* intrinsic value," the paper upon which it was printed should be sufficient to sustain a charge of grand theft. They also argue that it has value of an "evidentiary nature."

Defendant is correct that a forged check does not have a value equal to the amount for which it is written. (*United States Rubber Co. v. Union Bank & Trust Co.* (1961) 194 Cal.App.2d 703, 708–709 [15 Cal.Rptr. 385].) The check's value is "a nullity"; it is merely "an order to pay [citation] and is of no value unless accepted." (*Id.* at pp. 709, 708.) However, courts have found that there is still inherent value in similar items, even without the cash

value the items would theoretically be worth had the initial crime been successful. While neither party addressed it, we find the case of *People v. Caridis, supra,* 29 Cal.App. at page 166, to be instructive.

In *Caridis,* the defendant stole the winning ticket for an illegal lottery. (*People v. Caridis, supra,* 29 Cal.App. at pp. 167–168.) According to the rules of the lottery, the winning ticket was worth $1,250 in gold coin. (*Id.* at p. 167.) The defendant was charged with grand larceny. (*Ibid.*) He demurred, arguing the "subject matter of the alleged larceny had no legitimate value." (*Id.* at pp. 167–168.) The trial court agreed and dismissed the case. (*Id.* at p. 168.)

The appellate court agreed that as a matter of law the lottery ticket was not worth $1,250. (*People v. Caridis, supra,* 29 Cal.App. at p. 168.) The court noted, "It is a well-settled principle that an obligation which exists in defiance of a law which denounces it has, in the eye of the law, neither validity nor value." (*Ibid.*) For this reason, the court affirmed the dismissal of the grand larceny charge. (*Id.* at p. 169.) However, it also stated, "Considered as a mere piece of paper, the lottery ticket in question possessed perhaps some slight intrinsic value, which, however small, would have sufficed to make the wrongful taking of it petit larceny, and if that had been the charge preferred against the defendant, it doubtless would have stood the test of demurrer." (*Ibid.*)

■ This holding, and several others deriving from it, uphold theft charges for items of minimal intrinsic value. (See *People v. Leyvas* (1946) 73 Cal.App.2d 863, 864 [167 P.2d 770] [gasoline rationing stamps]; *People v. Martinez* (2002) 95 Cal.App.4th 581, 583–584 [115 Cal.Rptr.2d 574] [soap, shampoo, and hot water]; *People v. Franco* (1970) 4 Cal.App.3d 535, 537–538 [84 Cal.Rptr. 513] [an empty cigarette carton].) Here, the fictitious check, like the illegal lottery ticket in *Caridis,* had slight intrinsic value by virtue of the paper it was printed on. It also had intrinsic value as a negotiable instrument that, if legally drawn, would entitle its holder to payment on demand. Thus, it was sufficient to support defendant's conviction for grand theft from the person of the sales clerk from whom defendant snatched the check.

II–IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 833.

## DISPOSITION

The judgment is modified to stay, pursuant to section 654, the sentence on count two, uttering a fictitious check. As modified, the judgment is affirmed. The trial court is directed to amend the abstract of judgment to reflect the modification and to send a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

Scotland, P. J., and Nicholson, J., concurred.

A petition for a rehearing was denied September 3, 2008, and appellant's petition for review by the Supreme Court was denied November 12, 2008, S166414.